UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID CHRISTOPHER WILLIAMS,

    Plaintiff,

v.                                              Case No: 5:19-cv-00494-KKM-PRL

ROY C. CHEATHAM, *et al.*,

    Defendants.
_____

## **ORDER**

Plaintiff David Christopher Williams brings a *Bivens* claim for denial of access to courts against four officers at the Federal Correctional Complex at Coleman (FCC Coleman). (Doc. 28). The only remedy he seeks is money damages, as he is now released from federal custody. (*Id.* at 9). Specifically, Williams alleges that Defendants Roy C. Cheatham, S. Verdejo, John/Jane Doe, and Williams Childs, Jr., violated his First Amendment rights by denying him access to the courts and his attorney and by interfering with or destroying his legal mail. (Doc. 28 at 3, 6–7, 9; Doc. 41 at 2). The three named Defendants move to dismiss on several grounds, including that the United States has not waived sovereign immunity, that *Bivens* should not be extended to this context, and, even if it were, that Williams fails to allege facts to support a claim. (Docs. 30 & 38). Because the Court declines to extend *Bivens* to this context and because the

United States has not waived sovereign immunity, the Court grants the defendants' motions to dismiss.

I.  **BACKGROUND**

The events that gave rise to Williams's claim took place while he was incarcerated at FCC Coleman.[1] (Doc. 28 at 11, 15). In September 2017, Williams's attorney, Gabriel Diaz, mailed him three parcels through the United States Postal Service (USPS). (*Id.* at 4). These three parcels contained legal materials relating to Williams's prior criminal case. (*Id.*) For some reason, these parcels were returned to Diaz. (*Id.*)

Diaz resent the parcels through USPS. (*Id.* at 23-26). The packages were addressed to a P.O. Box in Coleman, Florida. (*Id.*) Affixed to each parcel was a USPS tracking number. (*Id.*) According to the Postal Service, the parcels were delivered to the P.O. Box in Coleman on October 27, 2017. (*Id.* at 18, 32).

After their delivery to the P.O. Box, all three parcels went missing. (*Id.* at 31, 33, 35–37, 40). What then happened to the parcels is the subject of this lawsuit. Williams contends that the packages were delivered to the prison and that they were either misdelivered or discarded. (*Id.* at 5, 31). He grounds this contention in part on a comment that Childs allegedly made to him. (*Id.* at 5). According to Williams, Childs asked "if [Williams] had gotten [his] legal mail the day before." (*Id.* at 51). Williams responded, "what mail?" (*Id.*) Childs then stated, "it must've been someone else." (*Id.*)

---

[1] Williams was released from federal custody on October 27, 2020. (Doc. 41 at 3).

The prison officers maintain that they have no record of the parcels ever arriving at the prison mail room. (Doc. 10 at 22, 25, 42).

Williams went through the Bureau of Prisons (BOP) grievance process to exhaust this claim. (Doc. 28 at 34–48). He also submitted a "Claim for Damage, Injury, or Death." (Doc. 10 at 33–34). The BOP responded by maintaining that they had no record of the missing parcels ever arriving at the prison mail room. (Doc. 10 at 22, 25, 42).

## II. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). This tenet, of course, is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

3

### III.   ANALYSIS

#### A. *Bivens* Claims

In three cases, the Supreme Court has recognized an implied damages remedy under the Constitution. In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Court recognized a cause of action under the Fourth Amendment Unreasonable Searches and Seizures Clause. In *Davis v. Passman*, 442 U.S. 228 (1979), the Court extended *Bivens* to a gender discrimination claim under the Due Process Clause of the Fifth Amendment. Lastly, in *Carlson v. Green*, 446 U.S. 14 (1980), the Court again extended *Bivens* to cover a deliberate indifference claim under the Eighth Amendment's Cruel and Unusual Punishment's Clause. But the Supreme Court has not recognized new implied damages remedies under the Constitution in decades, likely because "*Bivens* is a relic of the heady days in which th[at] Court assumed common-law powers to create causes of action." *Wilkie v. Robbins*, 551 U.S. 537, 568 (2007) (Thomas, J., concurring) (quoting *Corr. Servs Corp. v. Malesko*, 534 U.S. 61, 75 (2001) (Scalia, J., concurring)). Thankfully, those days appear to be behind us.

   1. Official Capacity and Individual Capacity of Officers

Where a *Bivens* claim exists, it applies to federal employees only in their individual capacities. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017) ("[A] *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others."); *Iqbal*, 556 U.S. at 676 (noting that in a *Bivens* suit, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

Constitution"); *see also Mursoli-Caballero v. Carvajal*, No. 5:21-CV-21-OC-39PRL, 2021 WL 118980, at *2 (M.D. Fla. Jan. 13, 2021) (Davis, J.) ("A prisoner may not maintain a *Bivens* action against the Bureau of Prisons (BOP), prison officials in their supervisory capacities, or individual corrections employees in their official capacities."). Instead, a suit against a federal employee in their official capacity requires a waiver of the United States' sovereign immunity.

In this case, Williams listed three named defendants: Cheatham, Verdejo, and Childs.[2] Williams sued all three defendants in their official capacities. He also sued Verdejo and Childs in their individual capacities. As already noted, however, a *Bivens* claim cannot be brought against a federal employee in his or her official capacity. Thus, the *Bivens* claim against Cheatham is dismissed. Additionally, any *Bivens* claims against Verdejo and Childs in their official capacities are also dismissed.

    2.  *Bivens* Does Not Extend to Access to Courts Claims

The Supreme Court has made clear that extending *Bivens* is a "disfavored judicial activity." *Ziglar*, 137 S. Ct. at 1857 (quotation omitted). Indeed, the Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Malesko*, 534 U.S. at 68.

---

[2] Williams also lists a fourth defendant, John/Jane Doe. (Doc. 28 at 3). Because Williams has not identified this fictitious defendant, he cannot proceed in federal court against him or her and his claims against this defendant are dismissed. *See Enriquez v. Dep't of Corr.*, No. 209-CV-2-FTM-29DNF, 2009 WL 1107745, at *2 (M.D. Fla. Apr. 23, 2009) (Steele, J.) ("Courts have recognized . . . that fictitious parties eventually must be dismissed if discovery fails to yield their identities."). Even if the John/Jane Doe defendant was not dismissed for this reason, the Court would still dismiss the claims against him or her for the same reasons it dismisses the claims against the named defendants.

Given this reluctance, when determining whether there is an implied damages remedy under the Constitution, a federal court must engage in a two-step inquiry. First, a court must determine if the case presents a new *Bivens* context, meaning whether "the case is different in a meaningful way from previous *Bivens* cases decided by th[e Supreme] Court." *Ziglar*, 137 S. Ct. at 1859. Meaningful differences may include, "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors not considered in previous *Bivens* cases." *Id.* at 1860. Additionally, when determining if the case presents a new *Bivens* context, a court should keep in mind that "even a modest extension is still an extension." *Id.* at 1864.

Second, if the *Bivens* context is new, "a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* at 1857 (quoting *Carlson*, 446 U.S. at 18). The Supreme Court "has not defined the phrase 'special factors counselling hesitation.'" *Id.* But "[t]he necessary inference . . . is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857–58. Put differently, "to be a

6

'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." *Id.* at 1858.

One such special factor that may counsel hesitation is "the availability of alternative remedies to address the alleged harm." *Wallace v. Bailey*, No. 5:20-CV-421-OC-39PRL, 2020 WL 7074573, at *2 (M.D. Fla. Dec. 3, 2020) (Davis, J.) (citing *Ziglar*, 137 S. Ct. at 1858); *see also Johnson v. Burden*, 781 F. App'x 833, 836 (11th Cir. 2019) ("The availability of alternative means of relief may alone limit the power of courts to 'infer a new *Bivens* cause of action.'" (quoting *Ziglar*, 137 S. Ct. at 1858)); *McRae v. Lockett*, No. 5:17-CV-299-OC-02PRL, 2019 WL 2303264, at *5 (M.D. Fla. May 30, 2019) (Jung, J.) ("If there is an alternative remedial structure, that alone may prevent extending the *Bivens* remedy."). "[L]egislative action suggesting that Congress does not want a damages remedy" may also counsel hesitation. *Ziglar*, 137 S. Ct. at 1865.

Here, Williams seeks to extend *Bivens* to a new context. Williams alleges that the defendants violated his First Amendment rights by denying him access to the courts, destroying his legal mail, and denying him access to his attorney. (Doc. 28 at 3, 6–7, 9; Doc. 41 at 2). But *Bivens* has never extended to the First Amendment (or any of Williams's alleged rights related to legal process). *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."); *Johnson*, 781 F. App'x at 836 ("[T]he Supreme Court has repeatedly confirmed that it has not extended a *Bivens* remedy to First Amendment claims."); *see also Rager v. Augustine*, 760 F. App'x 947, 953 (11th Cir. 2019) ("[I]t is by no means clear that a

damages remedy is warranted for a First Amendment retaliation claim like this one.");
*cf. Bush v. Lucas*, 462 U.S. 367, 390 (1983) (declining to extend *Bivens* to a First Amendment claim). Additionally, Williams's claims are meaningfully different from the cases where a *Bivens* remedy was extended. *Bivens* dealt with violations of the Fourth Amendment's prohibition of unreasonable searches and seizures; *Davis* extended *Bivens* to a gender discrimination claim under the Fifth Amendment Due Process Clause; and *Carlson* extended *Bivens* to an Eighth Amendment deliberate indifference claim. *Ziglar*, 137 S. Ct. at 1854–55. A First Amendment claim is meaningfully different from these three prior cases. See *Johnson*, 781 F. App'x at 837 ("The Supreme Court's post-*Hartman*[*v. Moore*, 547 U.S. 250 (2006)] cases indicate that First Amendment claims, like [Plaintiff's] here, represent a new *Bivens* context."). Thus, the Court finds that Williams's claims arise in a "new context." *Ziglar*, 137 S. Ct. at 1864.

Because this is a new *Bivens* context, the Court must consider whether there are special factors counseling hesitation. There are many. Thus, the Court declines to extend *Bivens* to this context.

First, Williams could use, and in fact did use, the BOP grievance procedure. Courts routinely conclude that this grievance procedure presents an alternative remedy that counsels hesitation. *See Pinkney v. Lockett*, No. 5:16-CV-00103-OC-02PRL, 2019 WL 1254851, at *6 (M.D. Fla. Mar. 19, 2019) (Jung, J.) ("Plaintiff arguably had alternative remedies available to him in the form of . . . the BOP grievance process."); *Ruffin v. Rawls*, No. 5:18-CV-591-OC-39PRL, 2019 WL 3752812, at *5 (M.D. Fla. Aug.

8, 2019) (Davis, J.) ("[T]o the extent Plaintiff's complaints have any validity, he has available to him an alternative remedy: he may prevail upon the prison grievance system . . . ."); *see also Dugan v. Scott*, No. 5:13-CV-235-OC-32PRL, 2019 WL 4737609, at *4 (M.D. Fla. Sept. 27, 2019) (Corrigan, J.) ("[P]risoners, like Plaintiff, may pursue non-monetary relief through the Bureau of Prison's grievance procedure."). Williams not only knew of this alternative remedy, he availed himself of it, filing grievances and appeals through the BOP grievance system. (Doc. 28 at 19–48). The existence of the BOP grievance system and Williams's utilization of it indicate special factors that counsel hesitation against extending *Bivens* here. *See Andrews v. Miner*, 301 F. Supp. 3d 1128, 1134 (N.D. Ala. 2017) (Coogler, J.) (finding that, while Plaintiff's BOP grievances were unsuccessful, "the existence of this alternative remedy also weighs against extension of *Bivens*").

Second, legislative action by Congress indicates that Congress did not intend for a damages remedy in cases such as this one. Congress "passed the Prison Litigation Reform Act of 1995 [PLRA], which made comprehensive changes to the way prisoner abuse claims must be brought in federal court." *Ziglar*, 137 S. Ct. at 1865. The PLRA demonstrates that Congress considered how to remedy prisoner-related abuses and declined to provide standalone damages against the BOP. *Id.* That choice by Congress forecloses this Court from taking it upon itself to legislate monetary damages for constitutional claims where the legislative branch elected not to do so. Courts in this district have likewise concluded that the PLRA is a special factor that counsels

9

hesitation. *See Dugan*, 2019 WL 4737609, at *5 ("Given Congress's active role in the area of prisoners' rights, this factor causes the Court to 'hesitate' and weighs against extending a *Bivens* remedy in this case."); *see also, e.g.*, *Montalban*, No. 5:16-CV-405-OC-60PRL, 2021 WL 252339, at *16 (M.D. Fla. Jan. 26, 2021) (Barber, J.); *Wallace*, 2020 WL 7074573, at *3; *McRae*, 2019 WL 2303264, at *6 ("While Congress's failure to create a damages remedy is not definitive, the fact remains that Congress has been active in the area of prisoners' rights and has not created a damages remedy.").

Due to the above, the Court declines to extend *Bivens* to this new context. Williams has raised no valid *Bivens* claims against Verdejo and Childs, and his claims against Verdejo and Childs in their individual capacities are thus dismissed.

### B. Official Capacity Claims

The United States has sovereign immunity from lawsuits. *See United States v. Sherwood*, 312 U.S. 584, 586 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued." (citations omitted)). Thus, the United States and its agencies can be sued for money damages only if it waives its sovereign immunity. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). This immunity "also generally extends to the employees of those agencies sued in their official capacities." *Ishler v. Internal Revenue*, 237 F. App'x 394, 397 (11th Cir. 2007); *see also Dugan v. Rank*, 372 U.S. 609, 620 (1963) ("[A] suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public

administration or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." (quotations and citations omitted)). Furthermore, any waiver of sovereign immunity, "must be unequivocally expressed." *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33 (1992) (quotation omitted).

A plaintiff must plead a waiver of sovereign immunity for a court to exercise subject matter jurisdiction. *See Lake Chase Condo. Ass'n, v. Sec'y of Hous. & Urb. Dev.*, No. 8:12-CV-177-T-23TBM, 2013 WL 3772487, at *1 (M.D. Fla. July 16, 2013) (Merryday, J.) ("[A] party suing the United States or an officer of the United States (or any other sovereign) must allege—in the complaint—the applicable waiver of sovereign immunity. A failure to plead the statutory waiver of sovereign immunity results in a failure to invoke the court's subject matter jurisdiction."); *see also Soderberg v. Internal Revenue Serv.*, No. 8:16-CV-3403-T-35AEP, 2017 WL 7788355, at *2 (M.D. Fla. June 2, 2017) (Scriven J.) (dismissing complaint against Internal Revenue Service for failing to plead waiver of sovereign immunity). Here, Williams brings First Amendment claims against Cheatham, Verdejo, and Childs in their official capacities. There has been no waiver of sovereign immunity, however, for the claims that Williams brings. Additionally, Williams fails to plead any waiver of sovereign immunity. Thus, the official capacity claims against Cheatham, Verdejo, and Childs are dismissed.

## IV. CONCLUSION

Williams fails to allege a cognizable claim against any of the defendants. In particular, he pleads no recognized *Bivens* claim against any of the officers in their

11

individual capacities. He also fails to plead any waiver of sovereign immunity for his claims against the officers in their official capacities. Thus, Williams has failed to state any valid claim. It is also apparent that amendment would be futile under these circumstances as any amendment would be insufficient as a matter of law. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999). Therefore, his case is dismissed with prejudice. Accordingly, the following is **ORDERED:**

1. Defendant Childs's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 38) is **GRANTED**.

2. Defendants Cheatham and Verdejo's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 30) is **GRANTED**.

3. Plaintiff's Amended Complaint (Doc. 28) is **DISMISSED with prejudice**.

4. The Clerk is directed to terminate all pending motions and close the case.

**ORDERED** in Tampa, Florida, on July 9, 2021.

Kathryn Kimball Mizelle
United States District Judge